IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF Apple iPhone, model 16e, cellular phone CURRENTLY LOCATED AT the ATF Wheeling Satellite Office Evidence Vault | Case No. 5:26-MJ-9 |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Brandi N. Alderman, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. Under Rule 41(c) of the Federal Rules of Criminal Procedure, a warrant may be issued "to search for and seize any (1) property that constitutes evidence of the commission of a criminal offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) property designed or intended for use or which is or has been used as the means of committing a criminal offense …"

2. This Affidavit is made in support of an application for a search warrant to search the cellular phone described below and in **Attachment A** (hereinafter, the "DEVICE") for property that constitutes evidence of the commission of a criminal offense, and property intended for and used in committing a crime, specifically, Title 18, U.S.C. Section 922(g)(1) (possession of a firearm by a convicted felon); Title 18, U.S.C. Section 922(g)(3) (possession of a firearm by an illegal drug user); Title 18, U.S.C. Section 922(g)(9) (possession of a firearm by a person convicted of a misdemeanor crime of domestic violence)

3. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and

Explosives (ATF), and have been so employed since May 2018. I hold a bachelor's degree in Regents Bachelor of Arts from West Liberty University. As a Special Agent for the ATF, I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. This school covered general training into the investigative techniques of federal law enforcement, including: interviewing, drafting of reports, affidavits, and complaints and training on search and seizure related issues. After the Criminal Investigator Training Program, I completed Special Agent Basic Training Program at FLETC in Glynco, Georgia. This training covered investigative techniques and procedures relating to alcohol, tobacco, firearms, explosives and arson related offenses. I have received extensive training, both formal and on-the-job, in the provisions of the Federal Firearms Laws administered under Title 18 and Title 26, U.S. Code and Federal Narcotics Laws administered under Title 21, U.S. Code. Since January 2020, I have been assigned to the ATF Wheeling, WV Satellite Office, during which my duties have included work conducting firearms and narcotics investigations in the Northern District of West Virginia.

4. During my time as a Criminal Investigator, I have investigated violations of Federal Firearms Laws, including cases that involved the "straw purchase" of firearms, the unlawful trafficking of firearms, and the possession of firearms by prohibited persons. I have also participated in various aspects of federal and state-controlled substance investigations, including interviewing defendants, witnesses, and cooperating sources, as well as seizing narcotics and narcotics-related assets and making arrests. I have conducted surveillance, including physical, mobile, and technical surveillance. I have attended multiple courses for specialized training in the forensic extraction and analysis of electronic information and preserving data from internet service providers.

5. I have participated in the execution of search warrants with multiple state, and federal law enforcement agencies relating to firearms violations and the illicit traffic in controlled substances. I have conducted and participated in numerous investigations, seized evidence, and interviewed suspects and witnesses involved in illicit use, distribution, and sales of controlled substances.

6. Prior to my current assignment with the ATF, I was a Law Enforcement Officer with the Wheeling Police Department located in Wheeling, WV from approximately February 2008 to May 2018. In 2008, I attended a 16-week course at the West Virginia State Police Academy designed to educate law enforcement officers. During my employment with the Wheeling Police Department, I was assigned to the Detective Division from February 2012 to May 2018 where I conducted and assisted with multiple felony investigations into but not limited to homicides, sexual assaults, malicious assaults, solicitation of minors, child pornography, burglaries, domestic assaults and robberies. I was a Task Force Operator with the Federal Bureau of Investigation Violent Crimes Against Children Taskforce and on the West Virginia Internet Crimes Against Children Taskforce with the West Virginia State Police from 2012 to 2018 where I drafted and participated in numerous search warrants. I also participated in multiple investigations into human trafficking and sexual solicitation of minors via computers.

7. I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States. As such, I am a Federal Law Enforcement Officer within the meaning of Rule 41(a), Federal Rules of Criminal Procedure.

8. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9. Based on my training and experience and the facts as set forth in this Affidavit, I believe there is sufficient probable cause to issue a Search Warrant for the DEVICE identified in **Attachment A**, to seek evidence related to violations of Title 18, U.S.C. Section 922(g)(1) ( possession of a firearm by a convicted felon); Title 18, U.S.C. Section 922(g)(3) (possession of a firearm by an illegal drug user); Title 18, U.S.C. Section 922(g)(9) (possession of a firearm by a person convicted of a misdemeanor crime of domestic violence); I respectfully request the issuance of a search warrant for the below-described DEVICE are in order to search for and seize the evidence (particularly described in **Attachment B**) contained therein.

## JURISDICTION

10. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated."

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

11. The property to be searched is an Apple iPhone, model 16e, cellular phone, black in color, possessed by Benjamin LOBB and recovered by Ohio County Sheriff's Office in the execution of a state court residential search warrant on Jan. 6, 2026 (the "DEVICE"). The DEVICE is currently located at the ATF Wheeling Satellite Office evidence vault.

12. The applied-for warrant would authorize the forensic examination of the Apple iPhone, model 16e, cellular phone for the purpose of identifying electronically stored data particularly described in **Attachment B**.

## PROBABLE CAUSE

13. The United States, including the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), is conducting a criminal investigation of Benjamin Edward LOBB, regarding suspected violations of the federal firearms, narcotics laws and domestic interstate violence.

14. On 1/6/2026, Carrie Johnson contacted Ohio County Sheriff's Office (OCSO) to report that her boyfriend, LOBB, had physically assaulted her at 927 Technology Drive, Triadelphia, West Virginia on or about 12/28/2025. Johnson reported she lived with LOBB for approximately two years and has been in an intimate relationship with him. LOBB destroyed her phone on the same date, so Johnson was unable to contact law enforcement for help for several days. Johnson told law enforcement she had been suffering physical abuse from LOBB since the spring of 2025 on a weekly basis. On 1/6/2026, Johnson used her tablet to message her daughter, "KC", to create a ruse that she (KC) needed to go to the hospital because she was sick in an effort to escape from LOBB. Johnson said she wasn't allowed to leave the property, and, if she should try, LOBB had threatened to shoot at her and her vehicle as she drove away. Johnson said she is terrified of LOBB, and stated she knew what LOBB is capable of, as she is aware of the violence LOBB has perpetrated on other women in the past.

15. Johnson told OCSO Deputies that LOBB had a privately made firearm, shotgun style, that is hanging above his workspace in the basement of the residence. Johnson explained the firearm functions by striking the firearm with a hammer.

16. After speaking with Johnson, OCSO obtained search warrants for LOBB's residence for evidence related to Domestic Battery and Prohibited Person in Possession of a Firearm. Further, OCSO obtained an arrest warrant for LOBB for Domestic Battery.

17. OCSO's Special Response Team executed the search warrant without incident and secured the residence. LOBB was arrested for domestic battery. OCSO deputies and ATF SAs then searched the residence for evidence related to the domestic battery and LOBB being a prohibited person in possession of a firearm.

18. During the execution of the search warrant 1/6/2026, LOBB's cellular phone, an Apple iPhone, black in color, model 16e, was recovered along with five firearms and numerous rounds of ammunition. Three of the five recovered firearms were privately made by welding and metal fabrication, and, of the other two, one is a 12-gauge shotgun, while the other is a shotgun receiver. Ammunition and spent casings were recovered throughout the residence, to include, in LOBB's bedroom, a hidden compartment above the master bathroom; an upstairs spare room; the pantry; and the basement. Johnson reported that the basement was LOBB's "domain," and she rarely went into the basement.

19. Special Agent Alderman and Special Agent Kozik interviewed Johnson who advised LOBB had shown her a video on his phone of him shooting one of the firearms he built. Johnson said that LOBB likes to show visitors photos and videos of the firearms on his cellular phone. Johnson recalled one of the last times was around Thanksgiving, 2025.

20. Both Johnson and KC recalled an incident that occurred in the fall of 2025, in which, LOBB shot at an ex-girlfriend named "Jess" and her boyfriend, "Nick." Johnson explained that, while her and LOBB were briefly separated in August 2025, LOBB had "Jess" at his residence. Johnson said "Jess" came to the residence to get some of her belongings. Johnson explained that LOBB shot toward "Jess" and told "Jess" that he would blow her head off, and that neither of them (i.e., Jess or Nick) would ever leave the property, implying he would kill them. KC recalled seeing LOBB with the pistol he used to shoot at "Jess," and she advised that LOBB

told her to pick up the casings. Johnson said she did not witness the shooting. However, she heard the shot and the verbal threat. Johnson advised LOBB had found the pistol in the glovebox of his father's (Thomas Lobb's) truck. Johnson said after the incident, the pistol was returned to Thomas Lobb.

21. Johnson advised Special Agents Alderman and Kozik that she was aware LOBB sold methamphetamine. Johnson explained that LOBB was a user of methamphetamine and would become violent whenever he ran out, as was the case during the last incident of violence toward her in December. Johnson said LOBB has used controlled substances as long as she has known him. Johnson said that she did not know where he got the methamphetamine from, and that he would leave for 30 minutes and sometimes hours to get it. Johnson said sometimes people would come to the residence to purchase methamphetamine, but she did not know who or in what quantities.

22. Special Agent Alderman and Special Agent Kozik had previously obtained information from a confidential informant that LOBB had a hidden area in his home where he stored contraband, including firearms. The Confidential informant told Special Agent Alderman LOBB had bragged about law enforcement missing a trap door that led to the hidden area containing contraband on previous search warrants conducted at his residence. During the 1/6/2026 search, a hidden area was located above the master bathroom in the residence where green ammunition cans with ammunition were located. The hidden area was located by removing a panel high on the wall in the pantry area of the residence. Once the panel was removed, a rope ladder could be pulled down to access the space.

23. Further, the confidential informant told Special Agent Alderman and Special Agent Kozik that LOBB possessed firearms and built firearms for other individuals in exchange

for money. The confidential informant also told Special Agents LOBB was a methamphetamine user.

24. A second confidential informant told West Virginia State Police Trooper Cody Schwertfeger that LOBB told the confidential informant that he (LOBB) had a hidden area in his home where he (LOBB) stored firearms and law enforcement missed the trapped door when searching the residence during a search warrant. Further, the confidential informant told Trooper Schwertfeger that LOBB built firearms for individuals. The CI also told Trooper Schwerfeger that LOBB used methamphetamine.

25. Johnson stated she heard LOBB talk about building additional firearms and building them for other people, however, she had no direct knowledge and explained she just heard LOBB talk about it. During the interview with KC, KC advised that she was aware that LOBB made firearms and had overheard LOBB talk to friends about doing so.

26. LOBB was convicted of a felony offense of Domestic Battery 3rd offense, in Ohio County West Virginia, on 9/17/2013 in Ohio County Circuit Court Case number 13-F-67. LOBB was also convicted of a misdemeanor crime of domestic violence, the offense of domestic battery in the Magistrate Court of Preston County, West Virginia, 9/7/2006 Case number 06M617.

27. The DEVICE is currently in the lawful possession of ATF, stored in the ATF Wheeling Satellite Office's evidence vault. The DEVICE has not been accessed or used since coming into ATF custody, so any digitally recoverable contents of the phone should be in the same state as they were when the DEVICE first came into the possession of ATF.

28. SA Alderman seeks authorization forensically image and examine the DEVICE (an Apple iPhone, model 16e, cellular phone, black in color) in order to uncover further evidence of the aforementioned violations. SA Alderman believes there is probable cause to search LOBB's

phone because there is information that there are, on the phone, pictures and videos of firearms that he manufactured and fired. Further, there is probable cause to search LOBB's cellular phone for conversations relative to the purchase of controlled substance. It is commonly known that the users of controlled substances arrange the purchase of controlled substances with their cellular phones and SA Alderman believes probable cause has been established to show LOBB is drug a user.

## TECHNICAL TERMS

29. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

30. Based on my training, experience, and research, as well as on my own experience using a government-issued cellular iPhone in my capacity as an ATF Special Agent and personal iPhone, I know that smart phones have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, the forensic examination of data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

31. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

32. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the DEVICE was used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the DEVICE because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

33. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the DEVICE consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

34. *Manner of execution.* Because this warrant seeks only authorization to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto residential premises. Consequently, I submit there is good cause for the Court to authorize execution of the warrant at any time in the day or night.

35. *Location of execution.* This warrant seeks authorization to forensically examine cellular phones. I know from previous investigative experience that the encryption protocols for cellular phones sometimes require advanced training and equipment for the successful execution of a search warrant. These resources are not always readily available within the Northern District of West Virginia, and therefore, this warrant seeks the Court's permission to conduct the forensic examination of the DEVICE in either the Northern District of West Virginia or the Eastern District of Kentucky, where Appalatchia HIDTA's Forensics Branch is located.

## **CONCLUSION**

36. Based upon the forgoing facts, I believe there is sufficient probable cause for the issuance of a Search Warrant for the property listed in **Attachment A**, to seek evidence related to violations of Title 18, U.S.C. Section 922(g)(1) (possession of a firearm by a convicted felon); and Title 18, U.S.C. Section 922(g)(3) (possession of a firearm by an illegal drug user); Title 18, U.S.C.

Section 922(g)(9) (possession of a firearm by a person convicted of a misdemeanor crime of domestic violence).

37. The applied-for warrant would authorize the imaging, examination and analysis of the DEVICE for the purpose of identifying electronically stored data, particularly described in **Attachment B**.

Respectfully submitted,

Brandi N. Alderman
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on

James Mazzone
UNITED STATES MAGISTRATE JUDGE